IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| 1411 DIVISION STREET LLC, | * |
| Plaintiff, | * |
| v. | * Civ. No. MJM-22-4 |
| FIRST AMERICAN TITLE INSURANCE COMPANY, | * |
| Defendant. | * |

## MEMORANDUM

Plaintiff 1411 Division Street LLC ("Plaintiff") filed this civil action against First American Title Insurance Company ("FATIC") alleging that FATIC breached its title insurance policy. ECF No. 1 This matter is before the Court on FATIC's motion for summary judgment, ECF No. 67, and Plaintiff's motion for summary judgment, ECF No. 70. The motions are fully briefed and ripe for disposition. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons set forth below, the Court shall grant Plaintiff's motion and deny FATIC's motion.

### I. BACKGROUND

#### A. Factual Background

On or about January 18, 2005, KT, LLC, the then-owner of 1411 Division Street, Baltimore, Maryland (the "Property"), entered into a "Rooftop Lease with Option" with Omnipoint Communications Cap Operations, LLC for the right to, among other things, install, maintain, repair, and operate wireless communication equipment on the "Carver Hill Apartments

Smokestack" (the "Smokestack Lease"). ECF No. 67-2. A Memorandum of Lease identifying and describing the Smokestack Lease was recorded among the land records for Baltimore City. ECF No. 67-3 (Memorandum of Lease).

By deed dated August 8, 2011, 1411 Division, LLC[1] and T8 Unison Site Management LLC ("Unison") entered into a Wireless Communication Deed of Easement and Assignment Agreement (the "Communications Easement"). ECF No. 67-4. The Communications Easement contained three parts, granting Unison an exclusive easement over: (1) "The entire surface of the eighty foot (80' +/-) smokestack ('Smokestack') located on the ('Building') on [the Property]"; (2) "Two hundred (200) square feet (20' x 10') of space for existing T-mobile equipment located adjacent to the Smokestack"; and (3) "Two hundred fifty (250) square feet (25' x' 10') of space necessary to accommodate future equipment for a future tenant." *Id.* at 10.

On April 4, 2016, Plaintiff entered an agreement to purchase the Property. ECF No. 67-5. By deed dated May 10, 2016, the Property was conveyed to Plaintiff for $866,400. ECF No. 1-1.

In conjunction with its purchase of the Property, Plaintiff purchased a title insurance policy from FATIC, dated June 2, 2016. ECF No. 67-10 (Title Policy). The Title Policy insured Plaintiff against defects in the title to the Property for an amount of $866,400. *Id.* The Title Policy insured against, among other things, "[a]ny defect in or lien or encumbrance on The Title." *Id.* at 1 of 5, ¶ 2. It limits FATIC's potential liability to Plaintiff to the lesser of "(i) the Amount of Insurance; or (ii) the difference between the value of the Title as insured and the value of the Title subject to the risk insured against by this policy." *Id.* at 4 of 5, ¶ 8. The Title Policy lists certain express exclusions from coverage, to include "[d]efects, liens, encumbrances, adverse claims, or other matters . . . created, suffered, assumed, or agreed to by the [Plaintiff][.]" *Id.* at 2 of 5, ¶ 3

---

[1] 1411 Division, LLC is not to be confused with the plaintiff in this action, 1411 Division Street LLC.

("Exclusion 3(a)"). There are also certain express exceptions from coverage listed in the Title Policy's Schedule B. *Id.*, Schedule B. While the Title Policy lists the Smokestack Lease as an express exception from coverage, it does not list the Communications Easement as an exception from coverage. *Id.*

A few months after Plaintiff's purchase of the Property, Plaintiff became aware of the Communications Easement and then made a title claim to FATIC. ECF No. 67-11 (letter dated October 31, 2016, from Stephen Finkelstein, on behalf of Plaintiff). FATIC followed up in February 2017, ECF No. 67-12 (emails dated February 23, 2017), but there is no evidence that Plaintiff replied at that time, *see* ECF No. 67-6 (Deposition of Corporate Designee for Plaintiff) at 118–19.

According to FATIC, in February 2018, the majority of the buildings on the Property were demolished by Plaintiff without the proper permit. ECF No. 67-1 at 9. The debris from the structures Plaintiff demolished was removed, leaving only the smokestack and an adjacent brick building remaining on the Property. *Id.*

On June 9, 2020, Caroline Hecker, representing Plaintiff, submitted a letter to FATIC making a second title claim under the Title Policy. ECF No. 67-13. This letter states, among other things, that Plaintiff had "recently" become aware of the Communications Easement. *Id.* FATIC acknowledged receipt of the title claim, ECF No. 67-14 (letter dated August 28, 2020), and both parties obtained appraisals of the Property, ECF No. 67-6 at 147–49; ECF Nos. 67-15 & 67-16 (Appraisal Prepared for FATIC).

After analyzing the competing appraisals, FATIC tendered to Plaintiff a check for $27,000. ECF No. 67-17 (letter dated April 26, 2021, and check). This payment ("DIV Payment") represented what FATIC believed to be the diminution in the value of the Property resulting from

the Communications Easement. *Id.* The letter dated April 26, 2021, enclosing the check further stated that the $27,000 payment fulfilled FATIC's obligations under the Title Policy and that FATIC "w[ould] be taking no further action regarding to the Claim or the [Communications Easement]." *Id.* Plaintiff did not cash the DIV Payment and did not respond to the April 26 letter.

Additional facts relevant to the Court's analysis will be discussed below, as necessary.

### B. Procedural Background

Plaintiff filed its Complaint in the United States District Court for the Central District of California on September 2, 2021. ECF No. 1. Plaintiff alleges that it has suffered substantial losses as a result of the lack of marketability of title to the Property, diminution in the value of the Property, and the inability to use the Property as planned, ECF No. 1, ¶ 14, and that FATIC is liable for these losses under the Title Policy, *id.* ¶ 15. FATIC filed an Answer on November 26, 2021. ECF No. 12. Then, on December 1, 2021, FATIC filed a motion requesting a change in venue to the District of Maryland. ECF Nos. 18–21. Plaintiff did not oppose the motion. ECF No. 24. On January 3, 2022, the motion was granted and this action was transferred to United States District Court for the District of Maryland. ECF No. 25.

After completing discovery, on May 28, 2024, FATIC filed a motion for summary judgment.[2] ECF No. 67. On June 21, 2024, Plaintiff filed a cross-motion for summary judgment and opposition to FATIC's summary judgment motion. ECF No. 70. On July 22, 2024, FATIC filed its opposition to Plaintiff's motion in reply in support of its own, ECF No. 72, and Plaintiff filed its reply on August 5, 2024, ECF No. 75.

---

[2] FATIC later filed a motion to seal the exhibit docketed at ECF No. 67-2, ECF No. 71, which is unopposed and shall be granted.

## II.  STANDARD OF REVIEW

A court may grant a party's summary judgment motion under Rule 56 if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Cybernet, LLC v. David*, 954 F.3d 162, 168 (4th Cir. 2020). A fact is "material" if it "might affect the outcome of the suit under the governing law[,]" and a genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986) (emphasis removed); *see also Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016). A party can establish the absence or presence of a genuinely disputed fact through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). The court must view all the facts, including reasonable inferences to be drawn from them, in the light most favorable to the nonmovant, *Matsushita Elec. Indus.*, 475 U.S. at 587, but the court is not permitted to weigh the evidence, make credibility determinations, or decide the truth of disputed facts, *Anderson*, 477 U.S. at 249.

"The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *Med. Mut. Ins. Co. of N. Carolina v. Gnik*, 93 F.4th 192, 200 (4th Cir. 2024) (citing *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)). The burden then shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Bouchat*, 346 F.3d at 522 (quoting Fed. R. Civ. P. 56(e)).

When both parties file motions for summary judgment, "the role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a

judgment may be entered in accordance with the Rule 56 standard." *Bryant v. Better Bus. Bureau of Greater Md., Inc.*, 923 F. Supp. 720, 729 (D. Md. 1996) (quoting *Towne Mgmt. Corp. v. Hartford Acc. And Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)). "Cross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist." *Id.* (quoting *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voight*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805 (1983)). "Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Id.* (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

**III.   DISCUSSION**

    **A.  Liability**

Each party moves for summary judgment in its favor on the question of FATIC's liability under the Title Policy. FATIC argues that it is entitled to summary judgment as to liability because Plaintiff was aware of the Communications Easement when it purchased the Property, and the easement, therefore, was an encumbrance that Plaintiff "created, suffered, assumed, or agreed to" within the meaning of Exclusion 3(a) of the Title Policy. ECF No. 67-1 at 14–18; ECF No. 67-10 at 2 of 5, ¶ 3. FATIC relies solely upon this provision to deny coverage. ECF No. 67-1 at 14–18. Plaintiff argues that Exclusion 3(a) does not apply because there is no evidence that it knew about the Communications Easement when it purchased the Property or that it engaged in any intentional conduct to create, suffer, assume, or agree to the encumbrance. ECF No. 70-1 at 10–14. In further support of its own summary judgment motion, Plaintiff argues that FATIC admitted its liability in connection with the DIV Payment. *Id.* at 1, 14–15.

6

As noted, Exclusion 3(a) excludes from coverage under the Title Policy "[d]efects, liens, encumbrances, adverse claims, or other matters . . . created, suffered, assumed, or agreed to by the Insured Claimant[.]" ECF No. 67-10 at 2 of 5, ¶ 3. This provision "generally is construed to exclude knowing and intentional conduct by the insured that results in a title defect or encumbrance." *Ask Realty II Corp. v. First American Title Ins. Co.*, Civ. No. CCB-04-1400, 2004 WL 1254005, at *4 (D. Md. June 7, 2004); *accord Mercantile-Safe Deposit & Tr. Co. v. Chicago Title Ins. Co.*, Civ. No. CCB-05-2217, 2007 WL 892103, at *8 (D. Md. Mar. 20, 2007) (citing cases). In other words, the Title Policy would exclude from coverage any defect in the title "resulting from knowing and intentional action or inaction" by Plaintiff. *Ask Realty II Corp*, 2004 WL 1254005, at *5. The exclusion is "intended to prevent the title insurer from being liable for matters caused by the insured's own intentional, illegal, or inequitable conduct." Palomar, Title Insurance Law § 6:10 (internal quotation marks omitted); *see id.* at n.6. The insured's conduct must rise to a level higher than negligence. *See Mercantile-Safe*, 2007 WL 892103, at *8 ("The insurer . . . may not avoid liability [under Exclusion 3(a)] based on mere negligence of the insured in bringing about the loss."); *Stewart Title Guar. Co. v. Closure Title & Settlement Co., LLC*, No. 3:18-CV-00058, 2019 WL 97045, at *6 (W.D. Va. Jan. 3, 2019) ("[T]he Fourth Circuit has intimated in an unpublished opinion that it would join the majority view that defects caused by the insured's mere negligence are not sufficient to trigger an Exclusion 3(a) provision.") (citing *Murnan Spring Hill Trust v. Stewart Title Guar. Co.*, 374 F. App'x 459, 461 (4th Cir. 2010)).

FATIC's argument that a defect that is "assumed or agreed to" requires only that the property is purchased with knowledge of the defect, ECF No. 72 at 3–4, fails based on its own cited authority, *Jha v. Chicago Title Ins. Co.*, No. 2:23-CV-00584, 2023 WL 7386430 (W.D. Wash. Nov. 8, 2023). In *Jha*, the court held, based on the leading Washington state case, that for

the "assumed or agreed to" language in an exclusion "to bar coverage," "something more than knowledge on the part of the insured" is required. *Jha*, 2023 WL 7386430, at *5 (citing *Turnwater State Bank v. Commonwealth Land Title Ins. Co. of Philadelphia*, 752 P.2d 930, 933 (Wash. Ct. App. 1988)). In *Jha*, "something more than knowledge" was present because there were contemporaneous records showing the Jhas knew that there were storm drain problems with the property, that these problems would result in significant costs to bring the property into compliance with county code, and that the Jhas received a list of the property's deficiencies and acknowledged the problems, all before they purchased the property "as-is." *Id.* at *5–6. Similarly, in *Malkin v. Realty Title Ins. Co.*, 223 A.2d 155, 157–58 (Md. 1966), the Supreme Court of Maryland concluded that the plaintiff was not entitled to damages because there was evidence that the Malkins understood that a roadway occupied part of the property, that it "made no difference to them since they were getting precisely what they saw when they inspected the property," and that they freely continued closing on the property with the knowledge and advice of counsel.

Like the insureds in *Malkin*, Plaintiff is not an unsophisticated party, and Plaintiff visually inspected the Property, but that is where their similarities end. Plaintiff's visual inspection combined with its knowledge of the Smokestack Lease may have put Plaintiff on notice of the observable telecommunications equipment located on the smokestack. But the presence of the telecommunications equipment was consistent with the Smokestack Lease and, therefore, would not have put Plaintiff on notice that there may be another separate encumbrance on the Property. The instant case is unlike *Jha* and *Malkin*, where there was clear evidence in each case that the plaintiff had actual knowledge of the property's relevant problems and encumbrances and intentionally assumed them. There is no such evidence in the instant case.

FATIC identifies no evidence that Plaintiff engaged in any "knowing and intentional conduct . . . that result[ed] in" the encumbrance at issue here. *Mercantile-Safe*, 2007 WL 892103, at *8. There is but scant evidence that Plaintiff was on notice that the Communications Easement existed at the time it purchased the Property. The only evidence of such notice is the Offering Memorandum and ALTA Survey that FATIC claims Plaintiff received before purchasing the Property. ECF Nos. 67-8, 67-9 & 72-1. This evidence is inadequate to trigger Exclusion 3(a). First, the record is unclear whether Plaintiff actually received and reviewed the Offering Memorandum and ALTA Survey. The only evidence to suggest that it did is deposition testimony of Plaintiff's representative that Plaintiff "reviewed . . . a survey." ECF No. 67-6 at 87:4–12. The representative testified further that he did not know whether the survey he reviewed was the ALTA Survey referencing the Communications Easement. *Id.* Second, even if Plaintiff did receive and review the Offering Memorandum and the ALTA Survey contained therein, the only reference to the Communications Easement in these materials indicates that the matter would be listed as an exception to coverage in Schedule B of the Title Policy unless it was "disposed of to the satisfaction of the [insurance] company[.]" ECF No. 67-9. Because the Communications Easement was not identified as an exception from coverage in Schedule B, *see* ECF No. 67-10, Schedule B, any insured would conclude from the statement in the survey that the easement had been "disposed of" to FATIC's satisfaction by the time the Title Policy issued.

In sum, the Court finds no genuine dispute of material fact as to whether Plaintiff knowingly and intentionally "created, suffered, assumed, or agreed to" the Communications Easement such that it is excluded from coverage under Exclusion 3(a) of the Title Policy. There is no evidence in the record to support application of this exclusion. Accordingly, Plaintiff is entitled

9

to summary judgment on the matter of FATIC's liability. Under the Title Policy, FATIC is obligated to indemnify Plaintiff for the encumbrance of the Communications Easement.

### B. Valuation

In the alternative to summary judgment as to liability, FATIC moves for summary judgment on valuation, arguing that it complied with its obligations by tendering the DIV Payment to Plaintiff. ECF No. 67-1 at 18–21. FATIC argues that the Title Policy provides that it may terminate its liability by rendering payment to Plaintiff for its loss and expenses incurred at the time of payment. *Id.* at 18–19. According to FATIC, the DIV Payment satisfied this requirement because the payment amount reflects the diminution in the value of the Property created by the Communications Easement as determined by the only competent property appraisal conducted in this case. *Id.* at 10–11; ECF No. 72 at 9–10. FATIC argues that no competing appraisal is reliable and admissible. *Id.* at 7–10. Specifically, FATIC argues that an appraisal it procured from Metzbower, Watts & Hulting, LC ("Metzbower Appraisal") is the only competent and admissible appraisal before this Court. *Id.* The Metzbower Appraisal, dated April 12, 2021, estimated the diminution in the value of the Property due to the Communications easement to be $27,000 as of September 16, 2020. ECF No. 67-15. The DIV Payment of $27,000 made to Plaintiff in April 2021 reflects this amount. ECF No. 67-17.

Plaintiff opposes the motion, arguing that the record reflects genuine disputes of material fact as to the diminution in the Property's value. ECF No. 70-1 at 15–23. Plaintiff points out that several other appraisals were conducted that result in divergent views as to the diminution in value, that the Plaintiff's own view is that the Communications Easement renders the Property worthless, and that the appraisal upon which FATIC relies is disputed by record evidence. *Id.*; ECF No. 75 at 6–13. Plaintiff principally relies upon an appraisal completed by Willowbrook Valuation

("Willowbrook Appraisal"), dated January 5, 2024, which opines that, as of September 16, 2020, the unencumbered and unimpaired value of the Property would be $405,000, but, with the Communications Easement, the Property was a total loss. ECF No. 67-18. Additionally, Plaintiff cites other appraisals that came to different conclusions: an appraisal by Sapperstein & Associates dated December 16, 2020, and procured by FATIC, which concluded that the impact of the Communications Easement on the Property's value was between $96,000 and $144,000 as of September 2, 2020, ECF No. 70-4; a second Sapperstein appraisal dated January 19, 2020, which concluded that the impact of the Communications Easement was $0 as of June 2, 2016, ECF No. 70-5; the appraisal of Gilbert Advising & Appraising, LLC, dated September 16, 2020, and procured by Plaintiff, which concluded that the diminution in value was $310,000 as of September 2, 2020, ECF No. 70-6 at 3; and an evaluation completed by Kevin Kagen of Lipman Frizzell & Mitchell dated February 8, 2021, and procured by FATIC, which calls into question the accuracy of the Sapperstein and Gilbert appraisals but opines that the Gilbert appraisal "has more supported results[,]" ECF No. 70-7 at 10.

In reply, FATIC argues that the only appraisals properly before the Court are the Metzbower Appraisal and Willowbrook Appraisal because they are the only appraisals for which expert disclosures have been made pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. ECF No. 72 at 7–8. FATIC further argues that the Willowbrook Appraisal is not reliable and is subject to exclusion from evidence under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). *Id.* at 9–10; ECF No. 67-1 at 19–21.

A claim for diminution of property "generally" or "ordinarily" requires expert testimony, "usually from a real estate appraiser." *Norris v. PNC Bank, N.A.*, Civ. No. ELH-20-3315, 2023 WL 3688335, at *20 (D. Md. May 26, 2023) (citing *Exxon Mobil Corp. v. Albright*, 71 A.3d 30,

11

100 (Md. 2013), and *Ray v. Mayor of Balt.*, 59 A.3d 545, 559 (Md. 2013)). In *Daubert*, the U.S. Supreme Court found "[i]mplicit in the text of Rule 702" of the Federal Rules of Evidence, a district court's responsibility to 'ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert*, 509 U.S. at 597). "To be relevant under *Daubert*, the proposed expert testimony must have 'a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). In assessing the reliability of expert testimony under Fed. R. Evid. 702, "the district court must ensure that the proffered expert opinion is 'based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Id.* (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). *Daubert* "offered a number of guideposts to help a district court determine if expert testimony is sufficiently reliable to be admissible." *Id.*; *see also Daubert*, 509 U.S. at 593–94 (whether expert's theory or technique can be tested and has been subjected to peer review and publication, its potential rate of error, and its general acceptance). But "*Daubert*'s list of relevant considerations is not exhaustive" and "neither necessarily nor exclusively applies to all experts or in every case[.]" *Id.* (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). A district court retains "'broad latitude' to determine whether these factors are 'reasonable measures of reliability in a particular case[.]'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 153).

The Court does not find the Willowbrook Appraisal to be inadmissible. The opinions expressed therein are based upon the specialized knowledge of Michael Lester, a real estate appraiser with over 25 years of experience in the Baltimore, Maryland and Washington, D.C. metropolitan areas. ECF No. 67-19; ECF No. 67-20 (Deposition of Michael Lester) at 20–23. The

valuation method utilized in the appraisal is the highest-and-best-use method, *id.* at 64, which is widely accepted. *See Helms v. Old Republic Nat'l Title Ins. Co.*, No. 4:16-CV-3010, 2018 WL 718426, at *3 (D. Neb. Jan. 11, 2018) (citing cases).

FATIC first takes issue with the valuation date listed in the Willowbrook Appraisal—September 16, 2020—arguing that the diminution in value should have been determined as of the date the defect in title was discovered, which was in the fall of 2016. ECF No. 67-1 at 20. Notably, the Metzbower Appraisal proffered by FATIC uses the same valuation date. *See* ECF No. 67-15. The Court does not find that the use of the September 2020 date renders the appraisals unreliable. The use of this date may call the *relevance* of both parties' appraisals into question. The test for relevance is whether evidence tends to make a pertinent fact "more or less probable than it would be without the evidence[.]" Fed. R. Evid. 401; *see also Daubert*, 509 U.S. at 591–92. Notwithstanding the use of the September 2020 date, the opinions offered in the Willowbrook Appraisal tend to make more probable Plaintiff's position that the diminution in the Property's value caused by the Communications Easement is greater than the $27,000 figure determined in the Metzbower Appraisal and reflected in the DIV Payment. Thus, the Willowbrook Appraisal would "help[ ] 'the trier of fact to understand the evidence or to determine a fact in issue.'" *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 591).

FATIC next takes issue with the Willowbrook Appraisal's failure to account for the impact of the Rooftop Lease, the Smokestack Lease, "the size and scope of the areas encumbered by the Communications Easement[,]" any other easements that might encumber the Property, and "whether the maximum allowed density for the Property could nevertheless be achieved notwithstanding the impact of the Communications Easement." ECF No. 67-1 at 20–21 (citing ECF No. 67-20 (Deposition of Michael Lester) at 44, 51, 52, 113). The Court finds such matters

to go to the weight of opinions offered in the Willowbrook Appraisal, not admissibility. *Glass v. Anne Arundel Cnty.*, 38 F. Supp. 3d 705, 716 (D. Md. 2014), *aff'd*, 716 F. App'x 179 (4th Cir. 2018) (expert's conclusions and "failure to take other data into account . . . go to the weight of the report, not its admissibility, and may be challenged on cross-examination"). These matters may be explored on cross-examination of the Willowbrook appraiser. *Id.*

FATIC also questions the reliability of Mr. Lester's opinion the preservation of the leased smokestack created a risk of collapse that undermined the value of the Property, pointing out that Mr. Lester is not a structural engineer. *Id.* at 21 (citing ECF No. 67-18). The Court finds that this issue goes to weight rather than admissibility. The opinion of a structural engineer might be necessary to quantify a risk that the smokestack would collapse, but the Court cannot find based on the record that it is beyond the ken of a real estate appraiser to opine that preservation of the smokestack created a possibility of collapse great enough to severely impact the value of the Property.Because, at this stage, the Metzbower Appraisal proffered by FATIC and the Willowbrook Appraisal proffered by Plaintiff may each be admissible, and they offer divergent conclusions as to the Property's diminution in value as a result of the Communications Easement, the Court cannot determine as a matter of law that FATIC has satisfied its obligations under the Title Policy. Accordingly, FATIC's motion for summary judgment on this issue must be denied.[3]

---

[3]  At this stage, the Court takes no position on the admissibility of Plaintiff's own opinion about the value of the Property or the other appraisals cited by Plaintiff in opposition to FATIC's motion. A property owner's opinion as to the value of their property "is generally admitted as lay opinion testimony under Rule 701 [of the Federal Rules of Evidence] and is sometimes justified by the landowner's special knowledge of their land[,]" *Mountain Valley Pipeline, LLC v. 0.32 Acres of Land*, 127 F.4th 427, 432–33 (4th Cir. 2025) (citing *Christopher Phelps & Assocs. v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2007)), but the "landowner's valuation opinion must rely on a valid foundation, not speculation or conjecture[,]" *id.* (quoting *Mountain Valley Pipeline, LLC v. 0.47 Acres of Land*, 853 F. App'x 812, 815 (4th Cir. 2021). Here, Plaintiff opines that the Communications Easement rendered the Property worthless, but the record presently before the Court leaves unclear the foundation upon which Plaintiff's opinion rests.

Plaintiff cites multiple district court cases for the proposition that the Sapperstein appraisals and the Kagen evaluation procured by FATIC may be admissible as an opposing party's statements under Rule

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment shall be GRANTED, and FATIC's motion for summary judgment shall be DENIED.

A separate Order will follow.

_3/25/25_
Date

Matthew J. Maddox
United States District Judge

---

801(d)(2)(C) of the Federal Rules of Evidence. *See Diamond X Ranch LLC v. Atl. Richfield Co.*, No. 313CV00570MMDWGC, 2018 WL 2127734, at *6 (D. Nev. May 8, 2018); *FS Southbrooke LP v. Nationwide Gen. Ins. Co.*, No. 2:21-CV-02120, 2022 WL 1469213, at *3 (W.D. Ark. May 10, 2022). The Court need not resolve the question of whether these materials are admissible at this stage, having found that the Willowbrook Appraisal by itself presents genuine disputes of material fact that defeat FATIC's summary judgment motion.